IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALICIA D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-2250-S-BN |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**AMENDED FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Alicia D. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

The undersigned entered Findings, Conclusions, and Recommendation on July 10, 2018, advising that the hearing decision should affirmed in all respects.

The undersigned WITHDRAWS his July 10, 2018 Findings, Conclusions, and Recommendation, which contained an error in describing the relevant background.

For the reasons explained below, the undersigned, once again, concludes that the hearing decision should be affirmed.

**Background**

Plaintiff alleges that she is disabled as a result of degenerative disc disease of the lumbar spine; degenerative joint disease of the knees; degenerative joint disease of the shoulders; degenerative joint disease of the hips; diabetes mellitus; diabetic peripheral neuropathy; morbid obesity; major depressive disorder; generalized anxiety

disorder; and chronic pain disorder. After her applications for disability insurance benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on March 3, 2016. *See* Dkt. No. 14-1 (Administrative Record ["Tr."] at 79-121 (Hearing Transcript)). At the time of the hearing, Plaintiff was 61 years old. Plaintiff has not engaged in substantial gainful activity since 2009.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. The ALJ specifically found that (1) Plaintiff was not engaging in substantial gainful activity during the relevant period; (2) Plaintiff had several medically determinable impairments that are "severe" – but not all of those that Plaintiff alleged; (3) Plaintiff did not have an impairment that met or medically equaled the severity of one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had a residual functional capacity ("RFC") to perform and maintain a limited range of light work; and (5) through the date last insured, September 30, 2015, Plaintiff was capable of performing and maintaining her past relevant work as a demonstrator.

Plaintiff appealed that decision to the Appeals Council. The Council denied the Plaintiff's request for review.

Plaintiff then filed this action in federal district court. Plaintiff takes issue with two of the ALJ's findings – the second and fifth outlined above. First, Plaintiff maintains that the ALJ failed to consider all of Plaintiff's severe impairments. And,

second, Plaintiff maintains that she could not perform her past relevant work with the RFC that the ALJ found.

The undersigned concludes that the hearing decision should be affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm

only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a).

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant

4

can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced the plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if the plaintiff substantial rights have been affected, *see Audler*, 501 F.3d at 448.

"Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional

5

evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, the plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff argues that the ALJ erred (1) by failing to identify as "severe" two of Plaintiff's alleged impairments and (2) by finding that Plaintiff could perform past relevant work.

For the reasons explained below, the undersigned concludes that the hearing decision of the ALJ should be affirmed in all respects.

I.    Plaintiff's "Severe" Impairments

As to Plaintiff's alleged impairments, the ALJ found that,

> [t]hrough the date last insured, the claimant had the following severe impairments: mild degenerative disc disease of the lumbar spine, moderate lumbar facet arthropathy, mild degenerative joint disease of the knees, mild-to-moderate degenerative joint disease in the shoulders, a left shoulder tear in the rotator cuff tendon, and morbid obesity (20 C.F.R. § 404.1520(c)).

Tr. at 22.

As to Plaintiff's alleged major depressive disorder, the ALJ expressly concluded, "based on all the evidence ... that [Plaintiff] does not have medically determinable depression or other medically determinable medical impairment (see C.F.R. § 404.1508)." *Id.* The ALJ did not specifically mention whether Plaintiff's alleged

degenerative joint disease of the hips was a medically determinable impairment, and, if so, whether it was "severe."

Plaintiff contends that the ALJ committed reversible error by failing to identify Plaintiff's depression and degenerative joint disease of the hips as severe impairments and then failing to consider those impairments in determining Plaintiff's RFC.

A.    <u>Depression</u>

Plaintiff maintains that the ALJ erred in finding that Plaintiff's depression was not severe and then failing to consider Plaintiff's depression in determining Plaintiff's RFC.

But Plaintiff misstates the ALJ's finding. As quoted above, the ALJ found that, under 20 C.F.R. § 404.1508, Plaintiff's alleged depression was not a medically determinable impairment. And "the question of the *existence of* a medically determinable impairment is distinct from, and logically antecedent to, the question of its *severity*." *Ranes v. Astrue*, No. 3:08-cv-2030-D, 2009 WL 2486037, at *3 (N.D. Tex. Aug. 14, 2009) (citing *Randall v. Astrue*, 570 F.3d 651, 657-59 (5th Cir.2009)). Accordingly, the Court first must determine whether substantial evidence supports the ALJ's conclusion that Plaintiff's alleged mental impairment of depression was not medically determinable.

The Social Security Act and Code of Federal Regulations define "a physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508. (The

Social Security Administration recently adopted new medical evidence rules and removed several provisions at issue here – including 20 C.F.R. §§ 404.1508 and 404.1528 – effective March 27, 2017. *See* 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff's application was filed before that date, the removed provisions still apply in this case.)

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508.

20 C.F.R. § 404.1528 explains what "signs, symptoms, and laboratory findings" each entail:

> (a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.
> (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.
> (c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 C.F.R. § 404.1528

In her brief, Plaintiff contends that the ALJ's conclusion as to Plaintiff's depression is unsupported by substantial evidence because the Plaintiff presented

8

evidence – after the State agency medical consultants' review – that "Plaintiff complained of depression, was diagnosed with depression[,] and received treatment for depression in the form of anti-depressant medication." Dkt. No. 17 at 16 of 24. Plaintiff relies on (1) medical records showing that Plaintiff described feeling depressed, (2) Plaintiff's testimony regarding her depression at the ALJ hearing, and (3) medical records showing that she was at one point prescribed – and irregularly took – an antidepressant and that the antidepressant still appeared on her medication list more than a year after Plaintiff first sought treatment at Parkland for her depression.

Medical records from Plaintiff's September 9, 2014 visit to Parkland show that Plaintiff complained of feeling depressed and crying easily for months, having a lack of interest and energy, and feeling insomnia. *See* Tr. at 495. The records note an assessment of depression and that Plaintiff was prescribed the antidepressant medication citalopram. *See id.* at 496.

 Progress notes from Plaintiff's subsequent visit to Parkland on October 2, 2014 indicate that Plaintiff described still feeling down but that she had stopped taking citalopram. Plaintiff complained that a full tab of the medication made her feel more anxiety, but she was instructed to adjust her regimen to start with a one-half tab daily and then work toward a full dosage.

Notes from a November 11, 2014 visit suggest that Plaintiff stopped taking the citalopram without reason, *see id.* at 498, but that she was nonetheless instructed to "[t]ake Citalopram daily for depression," *id.* at 499. At Plaintiff's October 2, 2015 and

December 9, 2015 visits to Parkland, the "Medication List" included citalopram and the same instructions from Plaintiff's October 2, 2014 visit. *See id.* at 533 & 537.

At the hearing, Plaintiff testified that she was "depressed because of [her] health ... and [her] pain that [she] has." *Id.* at 114. She testified that she had talked to a counselor about her depression and was "on depression pills" that lifted her mood "off and on." *Id.* at 115.

The ALJ found that this evidence, combined with the other evidence in the record, was insufficient to show a medically determinable impairment of depression. The ALJ explained that

> [i]n the written record, the claimant alleged forgetfulness; and she testified that she is depressed due to her pain. She testified that she takes medication for depression, and that she has been referred to a counselor. However, there is no objective evidence of any ongoing treatment for depression or other mental disorder. And medical records typically show negative screens for depression.

*Id.* at 22.

Substantial evidence on the record as a whole supports the ALJ's finding. Despite complaining of depression and being prescribed citalopram at the September 9, 2014 Parkland visit, Plaintiff's psychiatric exams on that occasion describe Plaintiff's "normal mood and affect" and normal behavior. Tr. at 496. Her neurological exam similarly indicates that Plaintiff was "alert and oriented to person, place, and time."*Id.* None of Plaintiff's many subsequent visits to Parkland reveal an abnormal psychiatric or neurological exam. And there are no records indicating that Plaintiff

10

sought treatment for depression after Plaintiff complained on October 2, 2014 of still feeling down.

Medical evidence preceding these records further supports the ALJ's finding. A report signed July 15, 2014 from the State agency psychological consultant, Blaine Carr, Ph.D., reviews various appointments from September 2013 through June 2014 in which Plaintiff showed no mental distress; was alert, cooperative, well appearing, well developed, and well nourished; had a normal mood and affect; exhibited normal behavior; and denied depression of change in mood. *See id.* at 124-25. Dr. Carr noted that there were "no mental medically determinable impairments established." *Id.* at 126.

Upon reconsideration of the Plaintiff's application for benefits in October 2014, Mark Boulos, M.D. similarly concluded that there were "no mental medically determinable impairments established" based on his review of Plaintiff's medical history and her complaints. *Id.* at 137.

Plaintiff's alleged mental impairment is thus supported almost entirely by her own statement of symptoms to physicians and to the ALJ at the hearing. Plaintiff points to no medical evidence of signs or laboratory findings that would support the ALJ's finding a medically determinable mental impairment. *See* 20 C.F.R. §§ 404.1508 & 404.1528.

And the limited objective evidence available – that Plaintiff was prescribed citalopram – does not render the ALJ's finding in error. Though a prescription for antidepressants or anxiety medication has, in some cases within the Fifth Circuit,

suggested a medically determinable mental impairment, those cases have uniformly involved more objective medical evidence of ongoing treatment than what Plaintiff presents here. *See Martin v. Colvin*, 165 F. Supp. 3d 506, 510-11 (N.D. Tex. 2016) ("Here, two treating physicians examined Plaintiff, observed and reported that her mood appeared anxious and depressed, and issued her or continued her on prescription medication to treat those conditions. Additionally, the state agency consulting doctors agreed that Plaintiff's depression and anxiety constituted MDIs and produced some limitations in her activities of daily living, social functioning, and maintaining concentration, persistence, or pace."*); Cruz v. Colvin*, No. EP-12-cv-00179-ATB, 2013 WL 3338591, at *7 (W.D. Tex. July 1, 2013) (holding that the ALJ erred in finding that the plaintiff's alleged anxiety was not a medically determinable impairment where one "doctor observed [the] [p]laintiff's mood and affect to be angered, calm, depressed, and flat"; the plaintiff later complained of anxiety of and concentration problems; a second doctor "concluded that [the] [p]laintiff appeared to be having a component of COPD vs. anxiety" and plaintiff was thereafter prescribed medication for anxiety and given educational materials for panic attacks; a third doctor's review of the plaintiff's symptoms was positive for anxiety and plaintiff was prescribed another medication for anxiety); *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 806 (N.D. Tex. 2009) (holding that the ALJ erred in finding that the plaintiff does not have a medically determinable mental impairment where the plaintiff had "a history of regularly taking to psychotropic prescription medications," "[t]wo doctors noted a medical history of

anxiety," and plaintiff presented evidence of diagnosed depression and anxiety from two additional doctors).

Because substantial evidence supports the ALJ's finding that Plaintiff does not have a medically determinable impairment of depression, the Court need not reach whether the ALJ properly analyzed its severity. *See Ranes*, 2009 WL 2486037, at *4 ("The question of severity ... does not arise until a medically determinable impairment or combination of impairments is found to exist.").

And, although Plaintiff argues to the contrary, the ALJ was not then required to consider Plaintiff's alleged mental impairment in determining Plaintiff's RFC. RFC is defined by 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1), as "the most you can still do despite your limitations." In assessing a claimant's RFC, the ALJ must consider all of the claimant's "medically determinable impairments ... including [those] that are not 'severe,'" and "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(2)-(3). But the ALJ – without error – determined that Plaintiff's depression was not medically determinable. And no medical evidence in the record shows that Plaintiff's alleged depression imposed a functional limitation on her ability to work. *See Scott v. Comm'r of Soc. Sec.*, No. CV 17-48-RLB, 2018 WL 1321037, at *8 (M.D. La. Mar. 14, 2018). Accordingly, the ALJ did not err in failing to address Plaintiff's alleged depression in determining her RFC.

B.    Degenerative Joint Disease of the Hips

As to Plaintiff's alleged degenerative joint disease of the hips, Plaintiff maintains that

13

> 1) there was evidence submitted after the [State agency medical consultants'] review of the administrative record documenting objective evidence of degenerative joint disease of the right knee; 2) the objective evidence of degenerative joint disease of the right hip, according to the Plaintiff, caused more than a minimal effect on her ability to perform work related activities; 3) the ALJ was aware of the evidence of degenerative joint disease of the right hip and questioned the Plaintiff about how the impairment effected her ability to perform work related activities yet failed to consider[] it; and 4) the ALJ's Decision failed to find the degenerative joint disease was severe or how it impacted the RFC.

Dkt. No. 17 at 15 of 23. Plaintiff appears to argue, in other words, that (1) Plaintiff's alleged degenerative joint disease of the hips should be considered a severe impairment and (2) the ALJ did not consider did not consider Plaintiff's hip impairment in determining Plaintiff's RFC.

Starting with Plaintiff's second argument, the ALJ's RFC analysis demonstrates that, although the ALJ did not discuss at step two whether Plaintiff's alleged degenerative joint disease of the hips was a severe medical impairment, the ALJ nonetheless considered the testimony and medical evidence regarding the condition in determining Plaintiff's RFC.

In making her RFC finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. at 23. In considering those symptoms and objective medical evidence, the ALJ explains:

> At the hearing, the claimant testified that she has back, hip, knee, and left shoulder pain. She rated the back pain at 8, the knee pain at 0, and the left shoulder pain at 7 (on a pain scale ranging from 0 to 10, with 10 representing the worst pain possible). She testified that the back and hip pain is present all the time. She added that she cannot lift her arm overhead. The claimant testified that she can lift a 4-pound bag of rice,

14

can walk 10 to 15 minutes, can stand for 10 to 15 minutes, and can sit less than 30 minutes. The claimant testified further that she has to lie down about 4 hours during the day. The claimant denied doing most usual daily activities, stating that her daughter does the laundry and cooking, and that her husband does the shopping (though she may go with him and, if so, she will use a motorized cart).

The medical evidence shows that the claimant has a history of muscoloskeletal impairments and obesity.

    ...

Progress notes from later in 2014 show that the claimant was seen for multi-site joint pain. However, physical examination in December 2014 showed that motor and sensory functioning was grossly intact (Exhibit 2F, p. 8). Diagnoses in January 2015 included back pain (chronic) and degenerative joint disease (multiple joints).

    ...

Physical examination on August 31, 2015, was unremarkable. In particular, examination showed that the claimant's motor and sensory systems were grossly intact. Medications included Methocarbamol 500 mg and over-the-counter Tylenol Arthritis (every 8 hours, as needed). Recommendation was that the claimant schedule physical therapy. Apart from "pain," diagnosis was "other" osteoarthristis involving multiple joints (Exhibit 5F, pp. 14-15). The most recent medical evidence is dated December 9, 2015 (after the date last insured), and shows that the claimant was advised to diet and increase her physical activity (Exhibit 5F, p.5).

*Id.* at 24-25. The ALJ's decision goes on to note that, "though the claimant alleges multi-site pain of disabling severity, treatment was generally conservative." *Id.* at 25. The ALJ further found that "[i]maging evidence was generally consistent with the conservative treatment, in that the evidence showed mild and moderate (as opposed to severe or advanced) degenerative changes." *Id.*

Throughout the ALJ's RFC analysis, the ALJ cites to much of the testimony and medical evidence on which Plaintiff now relies in arguing that her degenerative joint disease of the hips is a severe impairment. *See* Dkt. No. 14 of 24. Moreover, the ALJ

makes clear that she considered medical evidence that was submitted after the State agency medical consultants' most recent opinion. *See* Tr. at 26.

Accordingly, even if the ALJ erred by not determining whether Plaintiff's degenerative joint disease of the hips was a severe medical impairment, "the error is harmless because the ALJ considered this condition in [her] RFC analysis." *Boothe v. Colvin*, No. 3:12-cv-5127-D, 2013 WL 3809689, at *5 (N.D. Tex. July 23, 2013) (citing *Herrera v. Comm'r*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam) (holding that "ALJ's failure to assess the severity of [a claimant's] impairments at step two is not a basis for remand" where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, "retained the residual functional capacity to do other work"); *Gibbons v. Colvin*, No. 3:12-cv-0427-BH, 2013 WL 1293902, at *16 (N.D. Tex. Mar.30, 2013) (holding that error under *Stone v. Heckler*, 752 F.2d 1099 (5th Cir.1985), potentially causing ALJ not to recognize certain impairments as severe at step two, was harmless because ALJ considered the impairments in the RFC); *Reliford v. Colvin*, No. H-12-1850, 2013 WL 1787650, at *13 (S.D. Tex. Apr. 25, 2013) ("[E]ven if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis.")).

Because the ALJ considered Plaintiff's alleged degenerative joint disease of the hips in determining Plaintiff's RFC, the ALJ's failing to assess the severity of this condition at step two is not reversible error.

16

II.    <u>Plaintiff's Ability to Perform Past Relevant Work</u>

Plaintiff maintains that the ALJ's conclusion that Plaintiff could perform her past relevant work was inconsistent with the RFC that the ALJ found and with the DOT's definition of "demonstrator."

A claimant will be found to be "not disabled" when it is determined that she retains the RFC to perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands ... of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *1-*2 (S.S.A. Nov. 30, 1981); *see also* 20 C.F.R. § 1560(b)(2).

To determine whether a claimant can perform her past work, the ALJ is required to assess the physical demands of the claimant's prior work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). An ALJ may use vocational expert ("VE") testimony to obtain evidence of the physical and mental demands of a claimant's past relevant work either as the claimant actually performed it or as generally performed in the national economy. *See* 20 C.F.R. § 1560(b)(2).

Here, during the administrative hearing, the VE identified Plaintiff's past relevant work as "Demonstrator. DOT is 297.354-010. It's light. SVP is 3." Tr. at 117. The VE's testimony continued:

Q    With regard to the past relevant work, how does the DOT classify
     the reach, handle, finger, feel for this position?
A    The reach, handle and finger are all frequent.
Q    All frequent?
A    Yes

17

Q      So she was working from a cart with a microwave. Would – and as I understand it the DOT will not break out overhead reaching from reaching to the side and the front, is that correct?

A      That is correct.

Q      Have you had a chance to observe this type of position in the past? Are you familiar with it?

A      I'm familiar with the position but I have not observed it at length to do –

Q      Okay

A      – anything like a –

Q      Would –

A      – job analysis.

Q      Would overhead reaching be something that would have to be done frequently or occasionally?

A      Overhead reaching from what I have observed would be more on an occasional basis –

Q      Occasional basis?

A      –reaching forward being frequent.

Q      Okay, and again, the Claimant said she's right handed and not left, okay. All right, thank you.

*Id.* at 119-20.

In finding that Plaintiff could perform her past relevant work as a demonstrator, the ALJ relied on the DOT definition of demonstrator modified by the VE's testimony that working as a demonstrator required frequent forward reaching but occasional overhead reaching in reaching. The ALJ explained:

The vocational expert testified that the claimant has worked as

– a demonstrator, light work with an SVP of 3 (Dictionary of Occupational Titles [DOT] #297.354-010).

In response to a question from the undersigned, the vocational expert testified that the work of a demonstrator requires frequent reaching, as the work is performed in the national economy. However, the vocational expert testified further that in her experience, the work requires no more than occasional overhead reaching. The work involves no postural activities.

18

> The DOT does not distinguish overhead reaching from reaching in other directions. Nor does the DOT address reaching with just one upper extremity, as opposed to reaching with both upper extremities. Based on all of the evidence, and given the vocational expert's experience and training, the undersigned accepts the vocational expert's testimony that the work of a demonstrator requires no more than occasional overhead reaching (SSR 00-4p).
> ...
> Based on the testimony of the vocational expert and the record as a whole, the undersigned finds that through the date last insured, the claimant was able to perform past relevant work as a demonstrator, as described by the vocational expert.

*Id.* at 26-27.

First, Plaintiff argues that the ALJ's conclusion that Plaintiff could perform the job of demonstrator, which the DOT describes to require frequent reaching, conflicts with the ALJ's RFC analysis. In determining Plaintiff's RFC, the ALJ found that Plaintiff "was able to occasionally reach and work overhead with the left upper extremity." Plaintiff contends that the Court should read this RFC to mean that Plaintiff was able to, with her left arm, (1) occasionally reach and (2) occasionally work overhead. Accordingly, Plaintiff argues, "Plaintiff could not perform the job of demonstrator as it requires the ability to reach on a frequent basis" and the ALJ's conclusion that Plaintiff could perform the job of demonstrator was "not based upon substantial evidence." Dkt. No. 17 at 19 of 24.

The Commissioner does not dispute Plaintiff's interpretation of the RFC as limiting Plaintiff to occasional reaching with her left arm. The Commissioner instead contends that, because Plaintiff's past relevant work as she actually performed it – as opposed to how the VE and DOT classify it – involved zero to one hour of reaching in

an eight-hour workday, the ALJ was correct in finding that Plaintiff could perform her past relevant work despite her left arm being limited to occasional reaching.

But the ALJ's decision clearly relies on the VE's description of Plaintiff's past relevant work generally as opposed to Plaintiff's past relevant work as Plaintiff performed it, and the Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

The undersigned nonetheless concludes that there is substantial evidence to support the ALJ's finding that Plaintiff could perform the work of a demonstrator with her left arm limited to occasional reaching.

DOT #297.354-010, cited in the ALJ's opinion, provides that a demonstrator

[d]emonstrates merchandise and products to customers to promote sales: Displays product and explains features to customers. Answers customer's questions about product. Demonstrates use or production of product and simultaneously explains merits to persuade customers to buy product. ... May give product samples to customers.

Nothing in the job description of demonstrator "suggests that th[is] light-duty job[] require[s] *frequent* (as opposed to occasional) handling, reaching, and fingering with *both* arms, such that Plaintiff necessarily would need to use her [left, non-dominant] arm more than occasionally." *Jones v. Astrue*, 821 F. Supp. 2d 842, 852 (N.D. Tex. 2011) (holding that the the ALJ's limiting the plaintiff "to work involving only occasional reaching, handling and fingering with her right [dominant] arm" did not conflict with the ALJ's finding that the plaintiff could perform a job described in the DOT as requiring "at least *frequent* reaching, handling and fingering") (citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (affirming finding that claimant, whose left

20

arm had been amputated below the elbow, could perform jobs of cashier and ticket seller even though the DOT specified that such jobs required some manual dexterity)).

The ALJ's conclusion that Plaintiff could perform her past work as a demonstrator despite her left arm's limitation is thusbased on substantial evidence.

Second, Plaintiff argues that, before relying on the VE's testimony, the ALJ was required to resolve the conflict between the VE's description of a demonstrator's reaching requirements and the DOJ's description of those requirements. As one court within the Fifth Circuit recently explained:

> An ALJ's discretion to choose between conflicting evidence is not unfettered. In *Carey v. Apfel*, the Fifth Circuit embraced a "middle ground" approach. 230 F.3d 131, 147 (5th Cir. 2000). When a direct and obvious conflict exists, and an ALJ fails to explain or resolve the conflict, the probative value of the VE's testimony is so lessened that a reversal and remand for lack of substantial evidence usually follows. *Veal v. Soc. Sec. Admin.*, 618 F. Supp.2d 600, 609 (E.D. Tex. 2009). But when the conflict is tangential, implied or indirect, and it did not undergo adversarial development at the administrative hearing, the VE's testimony may be accepted and relied upon by the ALJ without resolving the later-proffered conflict provided the record reflects an adequate basis for doing so. *Carey v. Apfel*, 230 F.3d at 146.

> The Commissioner's policy for addressing and resolving conflicts between a VE's testimony and DOT information does not differentiate between obvious and implicit conflicts. Rather, the Commissioner directs that in all cases "the adjudicator has an affirmative responsibility to ask about any possible conflict between ... VE ... evidence and information provided in the DOT." Soc. Sec. R. 00–4p, 2000 WL 1898704, at *4. Further, the Ruling mandates:

>> [B]efore relying on VE ... evidence to support a disability determination or decision, [the ALJ] must: Identify and obtain a reasonable explanation for any conflicts ... and Explain ... how any conflict ... was resolved.

> *Id.* at *1. In the present case, the court will first examine if direct conflict exists. If the conflict is indirect and Plaintiff's attorney failed to develop the conflict during cross examination, this Court will examine if substantial evidence supports the ALJ's decision.

*Hernandez v. Berryhill*, No. 3:17-cv-260-RFC, 2018 WL 1278213, at *3 (W.D. Tex. Mar. 9, 2018).

Here, the ALJ did not err in relying on the VE's testimony. On examination by the ALJ, the VE testified that, while the DOT definition of demonstrator does not distinguish between overhead and forward reaching, "overhead reaching from what [she] observed would be more on an occasional basis ... reaching forward being frequent." Dkt. No. 14-1. There is no direct conflict and – although Plaintiff now argues that because "the VE had not observed the job at any length," she cannot "offer reliable testimony as an expert on an issue that she was not familiar with," Dkt. No. 17 at 21 of 24 – Plaintiff's counsel declined to cross examine the VE on the potential conflict and on the VE's qualifications during the hearing, *see* Tr. at 120 ("ALJ: ... Do you have any cross of the VE or redirect from the Claimant at this time or may I now go ahead and close the hearing and the Record. ATTY: You may close the record, Your Honor."). And the record shows a sufficient basis for the ALJ's relying on the VE's distinction between the forward and overhead reaching involved in a demonstrator job. *See Jones*, 821 F. Supp. 2d at 852-53 (citing *Carey*, 230 F.3d at 146).

Plaintiff further argues that, because the ALJ did not ask the VE a hypothetical question regarding whether Plaintiff could perform the job of demonstrator, the ALJ's finding at step four was not based upon evidence adduced at the hearing.

22

The Fifth Circuit has held that an ALJ need not consult vocational testimony at step four. *See Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) ("[The ALJ] specifically found that [the claimant] was capable of performing past relevant work .... The lack of expert testimony therefore be[came] irrelevant.") (citation omitted); *Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979) ("Vocational testimony is not necessary if the [ALJ] concludes that a claimant [can] return to his former occupation."); *see also Parisi v. Astrue*, No. 4:07-CV-711-Y, 2008 WL 5203704, at *9 (N.D. Tex. Dec. 10, 2008), *aff'd*, 351 F. App'x 951 (5th Cir. 2009) ("[A]lthough it is permissible for the ALJ to use the services of a vocational expert at the fourth step of the sequential evaluation process, it is not mandatory. *See Green v. Schweiker*, 694 F.2d 108, 112 (5th Cir.1982).)"; *Wells-Defleice v. Colvin*, No. 3:13-cv-1279-BH, 2014 WL 1670102, at *10 n.11 (holding that even though the ALJ's step four finding contravened the VE's testimony that Plaintiff could not perform any of her past relevant work, it was not erroneous because the Fifth Circuit has held that an ALJ need not consult vocational testimony at step four).

And Plaintiff fails to otherwise persuade the undersigned that, in cases where the ALJ relies on VE testimony at step four, as the ALJ does in part here, an ALJ must ask the VE a hypothetical question regarding the claimant's abilities to return to past relevant work. As Plaintiff points out, in obtaining evidence from a VE, "[t]he ALJ may use hypothetical questions." HALLEX I-2-6-74 (S.S.A.), 1993 WL 751902. The ALJ is not required, however, to ask such questions. *See* 4 SOC. SEC. LAW & PRAC. § 52:104.

23

And, although Plaintiff argues that the ALJ's not asking a hypothetical "prejudiced the Plaintiff[]," Dkt. No. 17 at 22 of 24, Plaintiff has not shown that additional evidence would have been produced and that the additional evidence might have led to a different decision, *see Ripley*, 67 F.3d at 557 n.22.

Because there is substantial evidence to support the ALJ's conclusion that Plaintiff can perform the work of a demonstrator with her left arm being limited to occasional reaching, the ALJ did not err at step four.

## Recommendation

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

24

DATED: July 12, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE